**Alana G. I. Simmons**, OSB No. 143456
The Dalton Law Firm
1400 SW Montgomery Street
Portland, OR  97201
P: 503-253-6029
F: 503-212-4439
alana@daltonlawfirm.com

**Rebecca Cambreleng**, OSB No. 133209
Crispin Marton Cambreleng
1834 SW 58th Avenue, Suite 200
Portland, OR  97221
P: 503-293-5770
rebecca@employmentlaw-nw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KATHERINE E. MUENCHOW**, <br><br> Plaintiff, <br><br> v. <br><br> **SOUTHWEST AIRLINES CO.,** dba **SOUTHWEST AIRLINES, HUNTLEIGH USA CORPORATION**, dba **HUNTLEIGH USA**, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT** <br><br> Negligent Misrepresentation; Breach of Duty of a Common Carrier; Negligence; Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress; Violation of Air Carrier Access Act <br><br> **DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over the claims for violation of the Air Carrier Access under 28 USC § 1331.

2.

This Court has jurisdiction over all common law claims herein asserted under 28 USC § 1367, as these claims share a common nucleus of operative fact with the federal claims herein asserted.

3.

Additionally, this Court has jurisdiction over all claims herein asserted under 28 USC § 1332, based on Diversity jurisdiction.

## PARTIES

4.

Plaintiff KATHERINE MUENCHOW is, and at all times referenced herein was, a resident of the city of Portland, county of Multnomah, and a citizen of the state of Oregon.

5.

Defendant SOUTHWEST AIRLINES CO. dba SOUTHWEST AIRLINES is a corporation incorporated under the laws of Texas with its principal place of business in Texas and is authorized to do business in the state of Oregon.

6.

Defendant HUNTLEIGH USA CORPORATION, dba HUNTLEIGH USA is a corporation incorporated under the laws of Texas with its principal place of business in Texas and is authorized to do business in the state of Oregon.

## FACTUAL ALLEGATIONS

7.

Plaintiff was a passenger on Southwest flight 1482 from Portland to St. Louis on Thursday, May 3, 2018.  Her return flight to Portland was scheduled for Tuesday, May 8, 2018.

8.

Plaintiff suffered a stroke-like neurological event in 2017 and has no use of her left leg and limited use of her left arm.  Plaintiff also suffers from a kidney condition that causes her to have bladder and kidney infections if she does not urinate frequently.

9.

In addition, at the time of the flight, Plaintiff had an injury to her left wrist which made the use of crutches very difficult.  Due to these injuries, Plaintiff was forced to travel by wheelchair, though unable to wheel herself.

10.

Prior to her flight, Plaintiff did the proper research on accessibility and assistance and made Defendant Southwest aware of her physical limitations and wheelchair needs.

11.

Plaintiff arrived at the Portland airport around 6:10 AM on May 3, 2018 at Southwest's curbside check-in. This was about three hours before her flight, as she had been instructed, to get timely access to her flight via Defendant Huntleigh who operates the wheelchair services at Portland International Airport through a contract with Port of Portland. The attendants ordered an airport wheelchair along with an attendant to help take Plaintiff through security and to her gate.

/ / / /

/ / / /

12.

Plaintiff waited for 25 minutes outside in the cold before being moved inside, where she learned that the wheelchair and attendant that had been ordered for her had been given to another customer.  She was told that there were no other airport wheelchairs available so she would have to use her own, but that an attendant was coming to help her to the gate.

13.

An attendant arrived about half an hour after Plaintiff's arrival at the airport.  As she was heading towards the gate, she asked the attendant if she could purchase some food.  The attendant told her that someone from Southwest would take her to get food.

14.

The attendant wheeled Plaintiff through security, brought her to her gate, and left her at the gate with all of her belongings.  Plaintiff arrived at her gate roughly 2 hours before her flight.  The attendant never returned.  No one offered to take her to the restroom at any point.

15.

Plaintiff sat at the gate for roughly an hour before a Southwest gate agent arrived at the gate.  At this time, there were few other travelers waiting at the gate.

16.

Plaintiff beckoned the gate agent over and asked him for help getting to the restroom.  He informed her that they were short-handed so all he could do for her was to take her to the entrance of the closest ladies' restroom.

17.

Plaintiff then explained to him that her arm was injured, and she would be unable to wheel herself and all of her belongings into the restroom from its entrance to use the facilities.

She instead requested to use the family restroom which had handicap access. The gate agent told her that it was too far for him to take her.

18.

The gate agent suggested that she wait until she was on board and request to use the aisle chair. He also told her that he would allow her to board first so she would have time to use the restroom once on board.

19.

Despite the gate agent's promise, several other passengers were invited to board before Plaintiff.

20.

Once on the plane, Plaintiff was transferred to the aisle chair to get her to her seat. Her personal wheelchair was taken to be loaded under the plane. She immediately asked the flight attendant to use the restroom but was told that she could not do so while other passengers were boarding.

21.

Plaintiff again requested to use the restroom before takeoff but was told that she would have to wait until the plane was in the air.

22.

Once in the air, Plaintiff spoke with another flight attendant about using the restroom. Plaintiff told the flight attendant that she'd been denied access to the restroom several times and explained that she has kidney issues which could lead to an infection if she didn't get to the restroom.

/ / / /

COMPLAINT 5

23.

The flight attendant claimed that the aircraft didn't have an airplane aisle chair, although Plaintiff had already used it, and said she would check with the captain on what to do.

24.

The flight attendant failed to come back and respond to Plaintiff's request. Eventually, Plaintiff called the flight attendant using the call button and again requested use of the restroom.

25.

The flight attendant finally returned and told Plaintiff that because they were expecting turbulence, the captain had required her to remain seated, and therefore was unable to take Plaintiff to the restroom.

26.

In tears, Plaintiff pleaded with the flight attendant to help her, to which the flight attendant responded that she couldn't help but would not stop Plaintiff from getting up and going herself. Plaintiff reminded the flight attendant that she could not walk and was unable to go herself, at which time the flight attendant shrugged and returned to her own seat.

27.

After a couple of minutes, Plaintiff called the flight attendant back again and asked her to explain to the captain her situation and that she was about to urinate herself. By this time, Plaintiff was sobbing because she was in so much agony. The passenger next to her was rubbing her back and telling her it would be okay.

28.

The flight attendant left and returned stating that the captain had said that the flight attendant could not assist Plaintiff, but that she could "do whatever it was [she needed] to do."

Plaintiff asked for clarification and asked if she should crawl to the restroom or wet herself, to which the flight attendant shrugged and responded "yes." The flight attendant then loudly asked why Plaintiff wasn't wearing a diaper and stated that the flight would be landing soon and she would help Plaintiff once they landed.

29.

The flight attendant also told Plaintiff that if she were to travel again in the future, she would need to bring someone who could help her.

30.

By the time they landed, roughly 4 hours after they departed Portland, it was too late. Plaintiff had wet herself in the airplane seat. Despite repeated requests, the flight attendants gave excuse after excuse and never helped Plaintiff get to the restroom during the flight.

31.

When the plane landed, the flight attendant announced on the speaker for all passengers to remain seated so that "a passenger" could get to the restroom.

32.

The flight attendants struggled to figure out how to unfold the aisle chair but eventually got Plaintiff to the airplane restroom at the front of the plane. After bringing her to the restroom, the flight attendants left the aisle chair in such a way as to prevent the restroom door from closing.

33.

As a result of the flight attendant's placement of the chair, the disembarking passengers were able to see Plaintiff on the toilet trying to clean herself up, with her pants around her ankles, as they departed the aircraft. Plaintiff pleaded with the flight attendants to close the door

COMPLAINT                                                                                              7

because other passengers could see her in the restroom. The flight attendants made no effort to close the door or provide Plaintiff with privacy.

34.

When Plaintiff was finished, she managed to get back in the aisle chair still in front of the cockpit.

35.

One of the pilots tried to exit the cockpit, not realizing that Plaintiff was waiting there, and slammed the door into her multiple times. When she exclaimed in pain, the pilot yelled at her to move. Upon learning she was in a wheelchair, he yelled for a flight attendant to move her out of the way.

36.

Plaintiff was eventually wheeled off the plane but had to wait in the jetway for another attendant to take her to the baggage claim. She was still in tears from her horrific treatment on the plane and sitting in urine-soaked pants.

37.

Plaintiff attempted to make a formal complaint while at the St. Louis airport, but because the process was taking so long and she was wet, cold, and uncomfortable in her urine-soaked pants, she took a customer service phone number and made the complaint from her daughter's home instead.

38.

Plaintiff had to ride in the car with her daughter and future son-in-law for over an hour in her soiled clothing. Plaintiff was wet, cold, smelled of urine, and was utterly humiliated.

/ / / /

39.

After returning to Portland the following week, Plaintiff again called Southwest to make complaints about her terrible treatment, as well as request additional funds to cover the cost of her wheelchair, which was destroyed on her return flight to Portland.

40.

Southwest customer service told Plaintiff that the company could not compensate her for her treatment or the wheelchair beyond the $280 they wrongly estimated as the value of the wheelchair, and that it would be "a learning experience" for their flight attendants.

41.

The customer service agent then offered to send Plaintiff a $250 flight voucher for Southwest. Plaintiff declined.

### FIRST CLAIM FOR RELIEF
### (Negligent Misrepresentation)
### (Against Defendants Southwest and Huntleigh)

42.

Plaintiff realleges, and incorporates by reference, paragraphs 1 through 41 of this Complaint.

43.

When Plaintiff purchased her airline ticket from Defendant Southwest, they led her to believe that if she requested a wheelchair, they would have an agent ready to assist her through the airport before her flight and remain with her until boarding.

44.

Plaintiff made Defendants Southwest and Huntleigh aware of her need for wheelchair assistance.

45.

During her time at the Portland airport prior to her flight, Plaintiff was made to wait extended periods of time due to the unavailability of wheelchairs for use. In the end, she wound up having to use her own wheelchair since the employee of Defendant Huntleigh stated that they were out of available wheelchairs.

46.

When she finally arrived at the gate, she was left alone for roughly an hour without any assistance in getting food or using the restroom.

47.

When the Southwest gate agent finally arrived, he refused to help transport her to the restroom. The flight attendants in the air refused to help Plaintiff with the wheelchair for the full 4-hour flight, despite repeated requests and pleas.

48.

Plaintiff relied on Defendant Southwest's promise of wheelchair assistance during her travels.

49.

Southwest's misrepresentation caused Plaintiff great distress as well as physical discomfort.

50.

Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the Court deems just and proper.

/ / / /

/ / / /

## SECOND CLAIM FOR RELIEF
### (Breach of Duty of a Common Carrier Towards Disabled or Infirm Passengers)
### (Against Defendant Southwest)

51.

Plaintiff realleges, and incorporates by reference, paragraphs 1 through 50 of this Complaint.

52.

When Defendant Southwest failed to provide the wheelchair assistance that the disabled Plaintiff previously requested, Southwest egregiously violated the duty of common carriers toward disabled passengers, a duty which binds them to provide as much additional care as is reasonably necessary to ensure the passenger's safety.

53.

Defendant Southwest additionally violated the duty of common carriers toward disabled passengers on various occasions by refusing to help Plaintiff to the restroom.

54.

Defendant Southwest failed to adequately train the flight attendants on the existence of and/or operational procedures of the aisle chair.

55.

Defendant Southwest did not provide the additional care that they had originally agreed to make available and ignored Plaintiff's numerous requests for help.

56.

None of Defendant Southwest's agents acted as though Plaintiff's physical safety or comfort were of importance.  She was consistently made to wait or told to ask someone else, despite the growing urgency of her situation.

57.

Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (Negligence)
### (Against Defendants Southwest and Huntleigh)

58.

Plaintiff realleges, and incorporates by reference, paragraphs 1 through 57 of this Complaint.

59.

Throughout Plaintiff's travels, Defendant Southwest was negligent in its failure to provide her with adequate assistance.

60.

While at the Portland airport, Defendant Huntleigh was negligent in its failure to provide Plaintiff with adequate assistance.

61.

Defendants Southwest and Huntleigh's treatment of Plaintiff fell below the standard of reasonable care for an airline or agent of an airline.

62.

Defendant Southwest had a duty to assist disabled passengers (1) in moving to and from seats, as part of the enplaning and deplaning processes; (2) in preparation for eating; (3) with the use of the on-board wheelchair to enable the person to move to and from a lavatory; and (4) in stowing and retrieving carry-on items, including mobility aids and other assistive devices stowed in the cabin.

63.

This failure to adequately fulfill Plaintiff's request for a wheelchair, access to the airplane aisle chair, and for assistance in getting to the restroom caused great hardship and suffering to Plaintiff, forcing her to wait extended periods of time, to continually request assistance, and to eventually urinate in her seat. These failures were a breach of Defendants Southwest and Huntleigh's duty to Plaintiff.

64.

Throughout her time at the Portland airport and her travels with Defendant Southwest, Plaintiff constantly came in contact with Southwest and Huntleigh agents who did not take reasonable care to ensure she was comfortable and not harmed. These agents ranged from the Huntleigh worker who left her at the gate to the gate agent to one of the flight's pilots. While Plaintiff made it clear that she is disabled, the Southwest agents did not adequately respond to her repeated requests to be taken to the restroom. Any reasonably agent of Defendants would have ensured that they found someone capable of helping Plaintiff go to the restroom, whether in the airport or on the flight.

65.

Defendants Huntleigh and Southwest breached the duties established under 14 CFR § 382.51 in their negligent treatment of Plaintiff.

66.

Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the Court deems just and proper.

/ / / /

/ / / /

## FOURTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)
### (Against Defendant Southwest)

67.

Plaintiff realleges, and incorporates by reference, paragraphs 1 through 66 of this Complaint.

68.

As described above, Plaintiff requested assistance from the gate agent both flight attendants on her flight. She explained her situation to the flight attendants who did not have sympathy despite Plaintiff's obvious distress and disability.  Instead, the flight attendants suggested that Plaintiff crawl to the bathroom or wet herself in her seat.  This caused Plaintiff great mental and emotional anguish.

69.

Traveling is a time of great vulnerability for a disabled person who must rely on the assistance and accommodation of others.

70.

The flight attendants' conduct toward Plaintiff was outrageous and done with an intent to cause Plaintiff severe emotional distress.

71.

When Plaintiff sought help with Defendant Southwest's customer service after her terrible experience, she was told that it would be a "learning experience" and was offered a voucher of such a low value that it would not have even covered another flight to St. Louis.  No refund offer was made.

/ / / /

72.

Throughout her travels with Defendant Southwest, Plaintiff was pressed to her physical and emotional limits by Southwest's agents who forced her to urinate on herself and then clean herself up in full view of an entire airplane of disembarking passengers.

73.

Traveling in and of itself can be stressful, but for Plaintiff, this trip became a nightmare because of Defendant Southwest's offensive and outrageous behavior.

74.

Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**(Negligent Infliction of Emotional Distress)**
**(Against Defendants Southwest and Huntleigh)**

75.

Plaintiff realleges, and incorporates by reference, paragraphs 1 through 74 of this Complaint.

76.

During her travels, agents of both Defendants Southwest and Huntleigh repeatedly failed to take the necessary precautions to ensure Plaintiff was protected from harm.

77.

Even though Plaintiff had expressly notified Defendants Southwest and Huntleigh that she was disabled and would need assistance, none of the Southwest or Huntleigh agents provided her with the assistance she needed. They did not act as reasonable agents would have in those

circumstances to ensure that a disabled customer would be shielded from acute emotional distress.

78.

Each agent of Defendants Southwest and Huntleigh who failed to assist Plaintiff in getting to the restroom were grossly negligent and failed to properly assess her physical condition and need for additional care.

79.

Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**
**(Violation of Air Carrier Access Act)**
**(Against Defendant Southwest)**

80.

Plaintiff realleges, and incorporates by reference, paragraphs 1 through 79 of this Complaint.

81.

The Department of Transportation has promulgated rules, 14 CFR § 382, governing airlines for the accommodation of disabled individuals pursuant to the Air Carrier Access Act (ACAA), 49 USC §§ 41702, 41705, and 41712.

82.

Subpart 39 of the DOT regulations provides that carriers shall ensure that individuals with a disability are to be provided with assistance in enplaning, deplaning, and assistance to and from the lavatory. 14 CFR § 382.39.

/ / / /

83.

Defendant Southwest failed to comply with this requirement by repeatedly failing to provide wheelchair assistance.

84.

Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asserts her right to a jury trial and prays for judgment against Defendants consistent with the above claims for relief including but not limited to:

1. Judgment for Plaintiff on all claims;

2. Judgment against Defendants, in an amount to be determined at trial, for noneconomic and other compensatory damages including pain, suffering, and emotional distress;

3. A declaration that Defendants' conduct violated Plaintiff's rights and an order requiring Defendants to correct this deficiency;

4. The institution of policies, practices, and programs that affirmatively eradicate the effects of past and present discrimination violations;

5. Reasonable attorneys' fees;

6. Expert witness fees and expenses;

7. Costs and disbursements incurred herein;

8. Punitive damages upon motion; and

/ / / /

/ / / /

COMPLAINT                                                                                                                     17

9.	Such other relief as the Court feels is appropriate under the circumstances.

Dated this 2nd of May, 2019.

                  Respectfully submitted,

                  THE DALTON LAW FIRM

                  *s/ Alana G. I. Simmons*

                  _____
                  Alana G. I. Simmons, OSB No. 143456
                  503-253-6029

                  -and-

                  *s/ Rebecca Cambreleng*

                  _____
                  Rebecca Cambreleng, OSB No. 133209
                  503-293-5770

                  Of Attorneys for Plaintiff